(Reap. Dec. 9444)

FISHER SCIENTIFIC COMPANY v. UNITED STATES

Entry No. 369, etc.

(Decided June 2, 1959)

Jerome G. Clifford (George W. Israel of counsel) for the plaintiff.

George Cochran Doub, Assistant Attorney General (Henry J. O'Neill and Daniel I. Auster, trial attorneys), for the defendant.

LAWRENCE, Judge: The 47 appeals for a reappraisement enumerated in the schedule hereto attached and made a part hereof, which were consolidated for trial and determination, involve the question of the proper value for appraisement purposes of certain analytical balances which were exported from Switzerland during the period from November 1, 1951, to December 31, 1954.

There is no controversy between the parties as to the basis of value, it being the position of both that foreign value is applicable. The only question presented is what constitutes the usual wholesale quan-

tity. Appraisement of the importations was predicated on values applicable to sales of one or two analytical balances, whereas plaintiff herein contends that the entered values applicable to sales in quantities of three or more models constitute the proper values for appraisement purposes.

The statutory provision here involved is contained in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U.S.C. § 1402(c)), reading as follows—

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It was brought to the attention of the court by plaintiff's counsel that "Mettler Analytical Balances," the subject merchandise in the instant case, had been the subject of previous litigation in *United States* v. *Fisher Scientific Company*, 40 C.C.P.A. (Customs) 164, C.A.D. 513, and in *United States* v. *Fisher Scientific Co.*; *Fisher Scientific Co.* v. *United States*, 44 C.C.P.A. (Customs) 122, C.A.D. 648. Whereas the records in said cases have not been incorporated herein, they are particularly worthy of note, and the latter case will serve as a guiding influence in the determination of the present issue.

In the case reported in C.A.D. 648, *supra*, it was held by the appellate court that the usual wholesale quantity, in which analytical balances imported from Switzerland between April 1949 and October 31, 1951, were sold, was in quantities of five or more balances. As to the importer's contention that due to a change in sales practice such instruments were sold on and after November 1, 1951, in wholesale quantities of three balances or more, the court said—

It is stated in one of Mettler's affidavits that a change in sales practice took place on November 1, 1951 and that after that date, balances were sold at one price in lots of three or more, and that sales in ordinary course of trade in quantities of three or more "numerically exceeded and were more numerous than sales thereof in any other quantity." As above noted, however, no evidence has been presented of any sale made after November 1, 1951. Under such circumstances, Mettler's statement presents nothing more than his conclusion and, as we held in *Brooks Paper Company* v. *United States*, *supra* [40 C.C.P.A. (Customs) 38, C.A.D. 495], such a conclusion does not constitute substantial evidence which would justify setting aside the appraiser's valuation. * * *

\* \* \* \* \* \* \*

It is urged by the importer that Mettler's conclusion is supported by the lists of sales in the incorporated case and in the instant one, and that such evidence as to sales "is projected to September 2, 1953." Such projection, however, is effected merely by Mettler's conclusions, so far as the period after October 31, 1951, is concerned, since there is no specific evidence as to a single sale after that date.

In our decision in the incorporated case, we said:

> * * * where the exporter of the imported merchandise is the sole producer of such merchandise, in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity.

No such summary has been presented here. We are in agreement with the Appellate Division that the importer has failed to present such substantial evidence as to the usual wholesale quantity of the involved merchandise after October 31, 1951 as to justify setting aside the valuations of the appraiser on exports made after that date. [Italics quoted.]

When this case was called for hearing, Benjamin R. Fisher, vice president for 17 years of the plaintiff company, was called to testify. He stated that he was the witness Fisher who testified in the earlier cases (cited above) and that the Mettler analytical balances here involved are the same kind of merchandise as in the previous cases. He identified an affidavit of Erhard Mettler of Zurich, Switzerland, which he had obtained at counsel's request, which affidavit, together with all of the exhibits attached thereto, was received in evidence as plaintiff's collective exhibit 1.

On behalf of defendant, there was received in evidence, as defendant's collective exhibit A, a certified copy of a report, together with accompanying papers, of William R. Beckett, American vice consul at Zurich, Switzerland. Inasmuch as said exhibit relates to sales made for home consumption in Switzerland between August 10, 1948, and July 19, 1950, which predates the period with which the court is here concerned, namely, November 1, 1951, to December 31, 1954, said exhibit is of no evidentiary value herein, which fact is conceded by defendant in its brief.

The affidavit of Erhard Mettler, together with the 14 enclosures attached to and forming a part thereof, which are in evidence as exhibit 1, appears to supply substantial evidence including the "*summary* of the relevant sales for the pertinent time period" which was lacking in the previous *Fisher* case, C.A.D. 648, *supra*.

Attached to exhibit 1 in the instant case are invoices representing all sales of analytical balances made for home consumption in Zurich, the principal market of Switzerland during the entire period from November 1, 1951, to December 31, 1954, which are identified as enclosure number 3, together with a tabulation of said transactions which is marked enclosure number 4. Said enclosures indicate that there was a total of 231 sales transactions during the period in question. Of said total, 66 sales were not in the ordinary course of trade since they covered sales of analytical balances made to special specifications for

experimental purposes, sales to hospitals, educational, scientific, and other nonprofit institutions at special prices or discounts for the encouragement of science, sales of old, used, or worn models, sales for demonstration and promotional purposes, and sales to various governmental agencies (Federal, cantonal, and municipal) for their use in which a subsidy or discount was granted for promotional purposes. The remaining 165 sales were made in the ordinary course of trade, of which 150 sales were to purchasers for their own use and not for resale to others. The remaining 16 sales also made in the ordinary course of trade were to retailers, dealers, wholesalers, and any other purchaser who bought for the purpose of resale to others and to purchasers who bought for their own use and not for resale. Of these 16 sales, one was for 8 balances, one for 4 balances, and 14 sales were of 3 balances each. The price per model remained the same irrespective of the quantity purchased in excess of three balances.

The appellate court, in arriving at its decision in the *Fisher* case, C.A.D. 648, *supra*, quoted from its earlier decision in the *Fisher* case, C.A.D. 513, *supra*, the following, which is deemed to be pertinent to the determination of the instant case—

> Both the affidavit of Exhibit 1 and the report of Exhibit A clearly establish that in the ordinary course of trade there are, in the instant case, only two price categories, and that price varied only with the quantity purchased. *Any purchaser*, whether wholesaler, retailer or consumer, who bought in quantities of 1 to 4 paid according to the higher price schedule; but *any purchaser* who bought 5 or more balances paid according to the second price schedule, at a wholesale discount of approximately 25%. * * *

> The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy, *United States* v. *Richard & Co.*, 15 C.C.P.A. (Customs) 143, T.D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402(c) is *5 or more* balances [Italics quoted].

The appellate court also stated—

> * * * As we there pointed out, the record indicates that there is only one wholesale quantity, namely, five or more balances, and that sales of less than that number are retail sales. We find nothing in the additional evidence here presented which convinces us that a different view should now be adopted. The fact that comparatively few sales were made at the wholesale price is not controlling. * * *

It is the opinion of this court that the reasoning applied and the conclusion reached in the previous *Fisher* cases, above cited, find their

counterpart in the instant case. From the evidence offered on behalf of plaintiff herein, it is apparent that, during the period from November 1, 1951, to December 31, 1954, the usual wholesale quantity applicable to sales in the ordinary course of trade to all purchasers in the principal market of the country of exportation for home consumption was three or more analytical balances.

It is contended in defendant's brief that—

In the instant case, in the ordinary course of trade, sales were made to *all* purchasers regardless of class or category in quantities of 1 and 2 models as well as in quantities of 3 or more models. The major portion of sales were in quantities of 1 and 2 models. The price was the same to *all* purchasers of 1 or 2 models regardless of the class or category of the purchaser. That retailers, or dealers, or wholesalers who resold did not purchase in quantities of 1 or 2 models is beside the point, because it was freely offered to them at the same price that any one else could purchase.

Accordingly, all sales in the ordinary course of trade, within the export period herein, should be considered in order to ascertain the usual wholesale quantity because they accurately reflect the manufacturer's business practice, and his ordinary course of trade. [Italics quoted.]

As was pointed out by the appellate court in the *Fisher* cases, *supra*, one of the considerations in arriving at a finding of foreign value within the statutory definition thereof is *usual wholesale* quantity. The record herein discloses that analytical balances were offered for sale and sold during the pertinent time in *wholesale* quantities of three or more balances. The record also discloses that said quantity was the *usual* wholesale quantity.

Upon the record, the court finds as facts that—

1. The subject merchandise, consisting of Mettler analytical balances, was exported from Switzerland between November 1, 1951, and December 31, 1954.

2. Zurich was the principal market in Switzerland for the sale of such merchandise.

3. Mettler analytical balances were freely offered for sale and sold in the ordinary course of trade to all purchasers for home consumption in Switzerland.

4. Said merchandise was not freely offered for sale or sold for exportation to the United States.

5. During the period of the instant importations, sales to all purchasers, whether consumers, retailers, wholesalers, or others, in the ordinary course of trade, were in quantities of three or more balances of one or assorted models.

6. At the dates of exportation of the involved merchandise, the freely offered prices of said balances to all purchasers for home con-

sumption in the principal market of Switzerland in wholesale quantities of three or more of one or assorted models were as follows—

| Model | 11/1/51 to 12/31/54 | 11/1/51 to 8/31/54 | 2/1/52 to 8/31/54 | 9/1/54 to 12/31/54 |
|---|---|---|---|---|
| M-5 | 1573. | | | |
| 200A4N } B-5 } | 1248. | | | |
| 200A4N Spcl. 200A4N, H-26 B-5, H-26 | | | 1310. | 1345. |
| 100A5M } B-6 } | 1404. | | | |
| D-4 | 845. | | | |
| D-5 | | 780. | | |
| K-6 | | | | 607. |

Packing charges, as involved, to be added

7. The Swiss sales tax of 4 per centum in force and effect during the aforesaid period attached only when the said merchandise was sold to unregistered dealers or to the consuming public.

Accordingly, the court concludes as matters of law that—

1. Foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis of value for appraisement purposes.

2. There is no export value as defined in section 402(d) of said act.

3. In the ordinary course of trade, the usual wholesale quantities of said analytical balances were three or more of one or assorted models.

4. The 4 per centum sales tax imposed by the Swiss Government is not a part of foreign value nor of the dutiable value of the merchandise herein.

5. The foreign value of the Mettler analytical balances in issue is as set forth in finding of fact numbered 6, *supra*.

6. As to any other merchandise, the appeals for a reappraisement are dismissed.

Judgment will be entered accordingly.